IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHUANG CHEN; and JIANFEI YE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY & COUNTY OF HONOLULU; DETECTIVE LORRAINE IWAMASA, in her individual capacity; and UNNAMED MALE DETECTIVE,<br><br>Defendants. | CIV. NO. 26-00054 JMS-WRP<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS THIRD AMENDED COMPLAINT, ECF NOS. 59 & 60 |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS THIRD AMENDED COMPLAINT, ECF NOS. 59 & 60**

## I. INTRODUCTION

This case arises out of an investigation into the alleged sexual assault of Plaintiff Shuang Chen ("Chen") by a United States Navy ("Navy") servicemember. Chen and her husband, Plaintiff Jianfei Ye ("Ye") (collectively, "Plaintiffs"), allege that the investigation was scuttled by Defendant Lorraine Iwamasa ("Iwamasa"), a detective with the Honolulu Police Department ("HPD"). Specifically, Plaintiffs allege that Iwamasa leaked evidence to the alleged assailant, omitted evidence from the police report, improperly transferred jurisdiction over the case to the Navy, and falsified case records to cover her tracks.

In the wake of these alleged events, Plaintiffs, proceeding pro se, sued Iwamasa, HPD, the City and County of Honolulu (the "City"), and an "Unnamed Male Detective." ECF No. 1. After the court dismissed the original complaint with partial leave to amend, Plaintiffs filed their Second Amended Complaint ("SAC"),[1] ECF No. 43, asserting:

- a claim against Iwamasa under 42 U.S.C. § 1983 based on an alleged violation of Chen's Fourteenth Amendment right to equal protection;
- a claim against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); and
- state-law claims against Iwamasa and the City for negligence and intentional infliction of emotional distress.

After a second round of motions, the court dismissed Plaintiffs' federal claims, declined to reach their state-law claims, and granted limited leave to amend. ECF No. 55 at PageID.628; *see also* ECF Nos. 46, 47, 50. Plaintiffs were instructed that they could amend "only as to (1) Chen's class-of-one equal protection claim, and (2) a *Monell* claim on behalf of Chen, premised on a class-of one theory." ECF No. 55 at PageID.628. The court further stated that Plaintiffs were permitted to "re-assert the state-law claims asserted in the SAC, but [could] not add any new claims (state or federal) or re-assert claims that have been

[1] No first amended complaint was filed in this case. Shortly before the original complaint was dismissed, Plaintiffs filed a motion for leave to file an amended complaint, together with a proposed first amended complaint. ECF No. 40. The motion was denied in light of the dismissal of the original complaint with partial leave to amend. ECF No. 42.

dismissed without leave to amend." *Id.* The court emphasized that this would be "Plaintiffs' final opportunity to amend." *Id.*

Plaintiffs filed their Third Amended Complaint ("TAC") on September 9, 2026. ECF No. 57. Consistent with the court's order, Chen asserts a class-of-one equal protection claim against Iwamasa and a *Monell* claim against the City. *Id.* at PageID.636–45.[2] Plaintiffs also reassert their state law claims. *Id.* at PageID.645–48.[3] Now pending before the court are separate motions to dismiss the TAC filed by Iwamasa and the City on September 23, 2026. ECF Nos. 59, 60. For the reasons that follow, the motions are GRANTED.

## II. BACKGROUND

### A. Factual Background[4]

On April 2, 2024, Chen was sexually assaulted by a Navy servicemember in an off-base condominium in Mililani, Hawaii. ECF No. 57 at

---

[2] According to the TAC, Chen also asserts her class-of-one claim against the City. *See* ECF No. 57 at PageID.636. But the allegations relevant to the class-of-one elements under Count One relate exclusively to Iwamasa's conduct. *See, e.g.*, *id.* at PageID.638–40. Because "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents[,]" the court considers the City's potential liability solely in relation to Chen's *Monell* claim. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

[3] Inconsistent with the court's order, Plaintiffs also reassert their request that the court "consider referring the conduct alleged" in the complaint to "federal prosecutorial authorities." ECF No. 57 at PageID.649. As Plaintiffs acknowledge in their opposition, the court has already declined this request. ECF No. 62 at PageID.740; ECF No. 55 at PageID.627.

[4] This factual background is drawn from the allegations contained in the TAC, ECF No. 57, which are taken as true at this motion-to-dismiss stage. *See, e.g.*, *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024).

PageID.631–32. Chen reported the assault to HPD on May 10, 2024, and Iwamasa "was assigned as the investigating officer." *Id.* at PageID.632. Iwamasa interviewed Chen on May 21, 2024, and "specifically permitted an unidentified male detective . . . to attend the interview." *Id.* Chen "did not consent to this male detective's presence and was not informed of his identity or role." *Id.*

During the interview, Chen provided "confidential hand-drawn evidence" of the condominium's layout and furniture placement as well as certain distinctive physical characteristics of the alleged assailant. *Id.* The alleged assailant was interviewed on June 6, 2024. *Id.* at PageID.634. Following this interview, but "prior to the execution of the search warrant," the alleged assailant was "observed replacing specific items . . . that corresponded to the confidential hand-drawn evidence" that Chen had provided. *Id.*

Iwamasa omitted certain evidence from the police report, including information about the alleged assailant's "long-term pre-assault harassment, sexual harassment, and intimidation of Plaintiff Chen and her family." *Id.* at PageID.633. After Chen "raised concerns about evidence leakage and investigative misconduct," Iwamasa "entered and modified case status records within the HPD computer system" and entered a case closure date of June 10, 2024. *Id.* Iwamasa further falsely represented to Chen that the case was being sent to the Honolulu

Department of the Prosecuting Attorney ("DPA") "for prosecutorial review." *Id.* However, the DPA later "confirmed that it never received" the case. *Id.*

Plaintiffs brought their concerns about the "investigative misconduct" and "evidence irregularities" to "supervisory HPD personnel and other City officials," including an HPD officer with "supervisory authority over the pre-transfer review." *Id.* at PageID.635. Despite receiving notice of Plaintiffs' concerns, HPD did not perform a "supervisory review" or take "corrective action," and instead transferred jurisdiction to the Navy on July 9, 2024. *Id.* at PageID.634–635. Four days prior, on July 5, 2024, Iwamasa told Plaintiffs that the investigation had already been transferred to the Navy with the DPA's consent. *Id.* at PageID.634. The DPA later denied that it consented to the transfer. *Id.*

Iwamasa further "withheld . . . physical and photographic evidence" collected from the alleged assailant's residence when the case was transferred. *Id.* at PageID.633. A Navy prosecutor later confirmed that the Navy never received these materials. *Id.* After the transfer, the Navy did not notify Chen of its investigation or seek her participation, did not detain or charge the alleged assailant, and ultimately "closed its investigation on July 18, 2024—less than ten days after assuming jurisdiction." *Id.* at PageID.634. After the investigation closed, the alleged assailant "repeatedly violated" a pre-existing restraining order protecting Chen and her family. *Id.*

On September 12, 2024, HPD's Professional Standards Office "issued a written determination" sustaining a portion of a complaint filed by Plaintiffs about the management of their case. *Id.* at PageID.635.

In support of Chen's *Monell* claim, Plaintiffs allege that in March 2026, an HPD officer not involved in Plaintiffs' case "was demoted" after he "shared confidential identifying information about a minor sexual assault victim with a private individual" and that information was subsequently shared on social media. *Id.* at PageID.635–36.

As a result of these events, Chen "suffered severe and documented psychological injury, trauma, ongoing psychiatric impairment, multiple hospitalizations, and deprivation of any meaningful opportunity to seek criminal accountability," *id.* at PageID.642, and Ye has suffered injuries related to the "permanent restructuring of family roles and responsibilities" and "caregiving obligations" that have flowed from Chen's psychiatric state, *id.* at PageID.630.

**B. Procedural Background**

On June 16, 2026, the court dismissed Plaintiffs' original complaint with partial leave to amend. ECF No. 41. Plaintiffs filed their SAC on June 22, 2026. ECF No. 43. Iwamasa and the City filed separate motions to dismiss the SAC on July 6, 2026. ECF Nos. 46, 47.

The court dismissed the SAC with leave to amend on August 25, 2026, ECF No. 55. Plaintiffs filed the TAC on September 9, 2026. ECF No. 57. Iwamasa and the City filed separate motions to dismiss on September 23, 2026. ECF Nos. 59, 60. Plaintiffs filed a combined opposition on October 5, 2026. ECF No. 62. Iwamasa and the City filed separate replies on October 20, 2026. ECF Nos. 63, 64. The court decides the motions without a hearing pursuant to Local Rule 7.1(c).

## III. <u>STANDARDS OF REVIEW</u>

A complaint must contain "a short and plain statement" of each claim "showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To determine whether this requirement is satisfied, the court must set conclusory factual allegations aside, accept non-conclusory factual allegations as true, and decide whether these allegations state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint "may not simply recite the elements of a cause of action," and instead "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Pro se filings must be construed liberally. *See, e.g.*, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). But "[a] liberal construction of a pro se

complaint . . . does not mean that the court will supply essential elements of a claim that are absent from the complaint." *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022).

## IV. DISCUSSION

### A. Federal Claims[5]

#### *1. Chen's Class-of-One Equal Protection Claim*

Chen asserts a § 1983 claim against Iwamasa and the City based on an alleged violation of her rights as a class of one under the Fourteenth Amendment's Equal Protection Clause. ECF No. 57 at PageID.636. While equal protection claims classically concern "governmental classifications that affect some groups of citizens more than others," such a claim can also be proper where "the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dep't of Ag.*, 553 U.S. 591, 601 (2008) (citations and quotation marks omitted).

To bring a successful class-of-one claim, a plaintiff must show (1) that she "has been intentionally treated differently from others similarly situated" and (2) "that there is no rational basis for the difference in treatment." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). The complaint must therefore

[5] Although the TAC refers to "Plaintiffs" (i.e., Chen and Ye) throughout, the two federal claims relate solely to injuries suffered by Chen. *See* ECF No. 57 at PageID.636 ("Plaintiff Chen asserts an equal protection claim as a 'class of one'"); *id.* at PageID.645 (alleging that "Plaintiff Chen was deprived of rights secured by the Constitution" in regard to her *Monell* claim).

allege which individuals were similarly situated to the plaintiff, explain how she was similar to those individuals, and describe the difference in treatment. *See, e.g.*, *McCollum v. Cal. Dep't of Corrs. & Rehab.*, 647 F.3d 870, 880–81 (9th Cir. 2011). As to the first requirement, the "class-of-one plaintiff must be similarly situated to the proposed comparator in all material respects." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022) (citing *PBT Real Est. LLC v. Town of Palm Beach*, 988 F.3d 1274, 1285 (11th Cir. 2021) ("The entities being compared *must be prima facie identical in all relevant respects*.")).

For the reasons that follow, the court concludes that the TAC fails to allege a deprivation of Chen's rights under the Equal Protection Clause and therefore dismisses Chen's class-of-one claim with prejudice. *See Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) ("To state a claim under § 1983, a plaintiff must [first] allege the deprivation of a right secured by the federal Constitution or statutory law . . . .").

*a. The alleged violations were an exercise of police investigative discretion that cannot form the basis of a class-of-one claim*

As a preliminary matter, "the class-of-one doctrine does not apply to forms of state action that 'by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.'" *Towery v. Brewer*, 672 F.3d 650, 660 (9th Cir. 2012) (quoting *Engquist*, 553 U.S. at 603). "In such cases, the rule that people should be 'treated alike, under like circumstances

and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted." *Engquist*, 553 U.S. at 603. Thus, a class-of-one claim is only appropriate where there exists "a clear standard against which departures, even for a single plaintiff, [can] be readily assessed." *Id.* at 602. In analyzing a class-of-one claim, the court must therefore "distinguish between discretionary and objective governmental decision-making." *Mazzeo v. Gibbons*, 2010 WL 4384207, at *6 (D. Nev. Oct. 28, 2010) (citing *Enquist*, 553 U.S. at 602–03).

In this case, the TAC alleges that Iwamasa was subject to "mandatory" standards under HPD Policy 4.20—its internal, written policy on sexual assault investigations—and that she "intentional[ly]" and "selective[ly]" deviated from those standards in Chen's investigation. ECF No. 57 at PageID.641; *see also id.* at PageID.636–40.[6] Plaintiffs therefore argue that Iwamasa's actions were not discretionary because she was bound to comply with Policy 4.20. *Id.* at PageID.641; *see also* ECF No. 62 at PageID.724 (arguing that "*Engquist* does not

---

[6] Specifically, Chen alleges that Iwamasa "deviat[ed] from these mandatory HPD victim-protection protocols" by: (1) allowing an unknown male detective to attend Chen's victim interview; (2) asking "intrusive, non-investigative personal questions" at the end of the interview when the recording device was off; (3) falsely stating that the case had been forwarded to the DPA; (4) manipulating case status records after Chen voiced concerns about evidence being mishandled; (5) omitting evidence from the official police report; (6) misrepresenting that Chen's case had been transferred to the Navy prior to its actual transfer; (7) allowing the disclosure of Chen's confidential, hand-drawn evidence; and (8) withholding "critical post-search-warrant evidence" when the case was transferred to the Navy. ECF No. 57 at PageID.638–40.

immunize departures from written victim-protection protocols" (capitalization altered and italics added)). The court disagrees.

Each of the complained-of acts occurred within the context of HPD's investigation of Chen's sexual assault complaint.[7] Numerous circuit and district courts have concluded that police investigations involve precisely the type of discretionary decision-making that is antithetical to a class-of-one claim. *See, e.g.*, *Flowers v. City of Minneapolis*, 558 F.3d 794, 799 (8th Cir. 2009) ("A police officer's decisions regarding whom to investigate and how to investigate are matters that necessarily involve discretion."); *Rebagliati-Ribbeck v. Cnty. of Alameda*, 2025 WL 1114630, at *3 (N.D. Cal. Apr. 15, 2025) ("[T]he discretionary decision-making that goes into police investigations is incompatible with the legal framework of class-of-one claims."); *Mazzeo*, 2010 WL 4384207, at *7 (concluding that plaintiff could not bring a class-of-one claim where she "challenge[d] discretionary governmental decision-making, *i.e.*, police investigative decisions"). The court finds these cases persuasive.

But even if Iwamasa's investigative actions were not categorically discretionary, Policy 4.20 itself grants a great deal of discretion to the investigating

[7] As the court explained in its dismissal of Plaintiffs' Due Process claim, "police officers have 'no affirmative obligation to investigate a crime in a particular way.'" ECF No. 41 at PageID.456 (quoting *Gini v. L.V. Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994)). Accordingly, "an inadequate investigation by police officers is not sufficient to state a § 1983 claim unless another recognized constitutional right is involved." *Greer v. Cnty. of Kauai*, 2026 WL 241907, at *12 n.15 (D. Haw. Jan. 28, 2026) (citations and quotation marks omitted).

officers and is consequently too broad to establish the "clear standard" contemplated in *Engquist*. 553 U.S. at 602. Per the TAC, the standards enumerated in Policy 4.20 are as follows:

- "Felony sexual-assault investigations are 'very sensitive in nature[;]'"
- "Such cases are assigned for specialized investigation;"
- "The assigned detective is to conduct an in-depth forensic interview of the victim;"
- "Reasonable efforts are to be made to preserve the scene and evidence;" and
- "Complete and thorough witness interviews are to be conducted."

ECF No. 57 at PageID.637 (capitalization altered).

Plaintiffs concede that Chen, "like other such complainants, received an assigned investigation and a formal victim interview." *Id.* In essence, then, Chen alleges that Iwamasa violated Policy 4.20 by failing to take "reasonable efforts . . . to preserve the scene and evidence" and to conduct a "complete and thorough witness interview[]." *Id.* But the term "reasonable efforts" as used in Policy 4.20 is not inherently objective or concrete—it provides no "clear standard" for HPD to follow. *Engquist*, 553 U.S. at 602; *see also Pettit v. Smith*, 45 F. Supp. 3d 1099, 1107 (D. Ariz. 2014) (explaining that the duty to preserve evidence is analyzed under a "reasonableness" standard, which itself requires consideration of additional factors including "consisten[cy] with clearly established applicable

standards." (citations and quotation marks omitted)). Nor does the phrase "complete and thorough" provide a clear playbook of investigative action. These policies are discretionary on their face and do not expressly prohibit the conduct Chen alleges violated her constitutional rights. Chen's class-of-one claim is therefore improper because it is founded on discretionary decisions made during a police investigation.

*b. Chen fails to allege that she was treated differently from similarly situated individuals*

Even if Chen's class-of-one claim was not predicated on discretionary actions, the court would dismiss for failure to plead the requisite elements. Most fatally, the TAC does not clearly identify any similarly situated comparators. It instead contains only vague and conclusory descriptions of "other similarly situated complainants of serious felony sexual assaults reported to HPD." ECF No. 57 at PageID.636; *see also id.* at PageID.640 (discussing "[o]ther similarly situated felony sexual-assault complainants whose cases were investigated by HPD under Policy 4.20").

These allegations appear to refer to *every* other felony sexual assault complainant and are not accompanied by facts showing how all such complainants are "similarly situated to [Chen] in all material respects." *SmileDirectClub*, 31 F.4th at 1123. Because they lack both specificity and factual support, these allegations fail to meet the pleading standard. *See Iqbal*, 556 U.S. at 678; *see also,*

*e.g.*, *O'Connor v. Cnty. of Clackamas*, 2012 WL 3756321, at *11 (D. Or. Aug. 28, 2012) (dismissing class-of-one claim where plaintiffs failed to "specifically identif[y] any similarly-situated land owners, developers, or contractors who were treated differently" and instead "merely and broadly reiterate[d] that they [were] treated inappropriately.").[8]

Likewise, the TAC fails to allege that Chen was treated differently from these ill-defined comparators. Indeed, the only facts pled with specificity in relation to a separate HPD sexual assault investigation highlight a *similarity* in treatment between that complainant and Chen—i.e., that certain confidential information was disclosed during the pendency of their sexual assault investigations—while also revealing that the complainant was not "similarly situated [to Chen] in all material respects." *SmileDirectClub*, 31 F.4th at 1123; *see* ECF No. 57 at PageID.636–37. Unlike Chen, the complainant in that instance was a minor whose confidential identifying information was disclosed to a private individual and then shared on social media. ECF No. 57 at PageID.636–37. The

---

[8] The TAC also cites three state court cases that purportedly "confirm [HPD's] application of" Policy 4.20 to other sexual assault complainants. ECF No. 57 at PageID.637–38. However, none of these cases references the policy or involve plaintiffs "similarly situated to [Chen] in all material respects." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022); *see also State v. Lora*, 147 Haw. 298, 465 P.3d 745 (2020) (vacationer sexually assaulted by a stranger); *State v. Tran*, 154 Haw. 211, 549 P.3d 296 (2024) (minor child subject to continuous sexual abuse by a family friend); *State v. Rakuita*, 155 Haw. 252, 561 P.3d 456 (Haw. Ct. App. Dec. 18, 2024) (victim sexually assaulted by a close friend). For instance, none of the cited cases appears to have involved military servicemembers.

TAC is devoid of any facts showing, for instance, that the perpetrator in that case was a military servicemember or that confidential information identifying Chen herself was shared with anyone or made public via social media.

Because Chen "has not plausibly pleaded the 'similarly situated' element of [her] class-of-one claim, [her] equal-protection claim as a whole fails, and [the court] need not reach the question of whether" any differential treatment "was rationally related to legitimate government interests." *Evans Creek, LLC v. City of Reno*, 2022 WL 14955145, at *2 (9th Cir. Oct. 26, 2022) (citing *SmileDirectClub*, 31 F.4th at 1123).

### *2.* Monell ***Claim***

*Monell* provides a framework for establishing municipal liability for the infringement of constitutional rights under § 1983. *See Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019) (citing *Monell*, 436 U.S. at 690–95); *see also* 42 U.S.C. § 1983 (providing a cause of action where government actors deprive a plaintiff of "any rights, privileges, or immunities secured by the Constitution and the laws"). Municipal liability cannot arise under a theory of *respondeat superior*, and instead only attaches where a plaintiff shows "*deliberate* action attributable to the municipality [that] directly caused a deprivation of federal rights." *Horton by Horton*, 915 F.3d at 603 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 415 (1997)). To state a *Monell* claim, a

plaintiff must therefore show "(1) that [she] possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (cleaned up).

Because the TAC fails to allege a violation of Chen's constitutional rights, it necessarily fails at the first element. *See id.*; *see also Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996) ("Under [*Monell* claim precedent] and general principles of § 1983 liability, an individual may recover only when that individual's federal rights have been violated."). But even if Chen had alleged a constitutional violation, the court would still dismiss her *Monell* claim because the TAC fails to allege the other requisite elements.

A plaintiff can satisfy the policy element by identifying "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton*, 915 F.3d at 602–03. Chen's claim includes allegations as to both the second and fourth of these theories. *See* ECF No. 57 at PageID.643–45.

For a "practice or custom" to satisfy the policy element, it must be "so persistent and widespread that it constitutes a permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations and quotation

marks omitted). Here, the TAC refers only to Chen's own HPD investigation and a single other incident that occurred two years later in which a sexual assault complainant's confidential information was leaked. *See* ECF No. 57 at PageID.644–45. These "two episodes" are insufficient to establish a "departmental custom of failing to safeguard confidential sexual-assault victim information" as alleged in the TAC, *id.* at PageID.645, or any sort of "persistent and widespread" custom, *Trevino*, 99 F.3d at 918.

As to Chen's alternative, "final decision-maker" theory, the TAC alleges that the "command-level officers" who transferred her case to the Navy "held final policymaking authority over inter-agency jurisdictional transfers" and that their failure to halt the transfer "constitutes a final policy decision directly attributable to the City." ECF No. 57 at PageID.644 (capitalization altered). While "municipal liability may be imposed for a single decision by municipal policymakers," such liability arises "only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 481 (1986). "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481–82.

Setting aside its conclusory allegations, the TAC fails to identify an individual with final authority to establish policy as to jurisdictional transfers of HPD cases. Further, there is no clear causal link between the alleged violation of Chen's equal protection rights as a class of one, which arose from Iwamasa's deviations from Policy 4.20, and the decision of other officers to transfer her case to the Navy. ECF No. 57 at PageID.644; *see also* ECF No. 62 at PageID.734 (acknowledging in their opposition that "Plaintiffs never alleged the Detective Iwamasa was the final policymaker for inter-agency transfers").

Because the TAC fails to sufficiently allege either a constitutional violation or a municipal policy or custom, the latter two *Monell* factors are moot. *See Dougherty*, 654 F.3d at 900. Accordingly, Chen's *Monell* claim is dismissed with prejudice.

**B. State-law Claims**

Plaintiffs additionally re-allege their state-law tort claims. ECF No. 57 at PageID.645–47. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state-law claims where, as here, it has "dismissed all claims over which it has original jurisdiction." In so doing, the court must consider "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156,

173 (1997). Where no federal claims remain, the balance of factors will generally point toward declining to exercise jurisdiction over remaining state-law claims. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

Exercising its discretion with those considerations in mind, the court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims and DISMISSES these claims without prejudice to refiling in state court.[9]

## V. <u>CONCLUSION</u>

For the foregoing reasons, the motions to dismiss, ECF Nos. 59 & 60, are GRANTED. Plaintiffs' federal claims are DISMISSED WITH PREJUDICE. Plaintiffs' state-law claims are DISMISSED WITHOUT PREJUDICE.

Given that Plaintiffs have had multiple prior opportunities to amend, further amendment would clearly be futile. *See, e.g.*, *Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1243 (9th Cir. 2023) (explaining that "leave to amend should be given freely," but "denying leave is not an abuse of discretion if it is

---

[9] If Plaintiffs file their claims in state court, the statute of limitations would be tolled for the period that this federal case was pending. *See* 28 U.S.C. § 1367(d) (stating that the "period of limitations for any claim asserted" under the district court's supplemental jurisdiction "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period"); *Artis v. District of Columbia*, 583 U.S. 71, 75 (2018) ("We hold that § 1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance, i.e., to stop the clock.").

clear that granting leave to amend would have been futile." (citations and quotation marks omitted)). The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 5, 2026.

/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge